UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAMAR GLOVER,

                 Petitioner,

                                                    **DECISION AND ORDER**
      -vs-                                             **No. 04-CV-6329(VEB)**

GARY FILION, Superintendent,

                 Respondent.
_____

## I. Introduction

*Pro se* petitioner Lamar Glover ("Glover" or "petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction, following a jury trial, on charges of second degree murder (N.Y. Penal Law § 125.25(2)) and second criminal possession of a weapon (N.Y. Penal Law § 265.03(2)). Glover's conviction was unanimously affirmed on direct appeal, and leave to appeal was denied. *People v. Glover*, 302 A.D.2d 926 (App. Div. 4th Dept.), *leave denied*, 99 N.Y.2d 654 (N.Y. 2003). Glover's subsequent application for a writ of error *coram nobis* challenging the effectiveness of his appellate counsel was summarily denied. *People v. Glover*, 4 A.D.3d 900 (App. Div. 4th Dept.), *leave denied*, 3 N.Y.3d 640 (N.Y. 2004). This timely habeas petition followed. For the reasons that follow, Glover's request for a writ of habeas corpus is denied and the petition is dismissed.

## II. Factual Background

The conviction here at issue stems from the fatal shooting of David Nesmith in the City of Rochester on October 12, 2000. That night, sixteen-year-old Glover was carrying a .45-caliber handgun. He was with three of his friends, one of whom was armed with a .44-caliber handgun.

1

They had been driving around the city for about two hours before spotting Nesmith walking on Pardee Street at approximately 11:30 P.M. After André Parsons pulled the car over on nearby Bismark Street, petitioner and Parsons exited the vehicle to confront Nesmith, with whom petitioner previously had "had a problem." (The sentencing minutes reveal that petitioner had previously shot Nesmith 37 days prior to fatally shooting him. *See* Transcript of Sentencing Hearing at 4).

Investigator Reinstein testified that before petitioner provided and signed a written statement he supplied various accounts as to his actions that evening. At first, until being informed that the police would check on his story, Glover maintained that he had not been on Pardee Street at all, alleging that he had been with Shameika Scott until early morning. He then withdrew that account, and accused two of his friends of the shooting. He subsequently claimed that the shot came from an unknown source. T.364-365.[1]

Petitioner ultimately gave the following written statement to the police:

> André [Parsons] told me to watch this guy, he said he's reaching. I kept walking towards him. I saw that what he was reaching for, it ended up being cigarettes. I talked to Dave [Nesmith] for five minutes or so. After talking to him, he started talking junk to me and then started walking towards me. I was walking away from him when he walked towards me. When he did this, I pulled out my gun. When I pulled out my gun, I pointed it at him. He then tried to grab the gun out of my hand. When he was trying to grab it, it went off and it hit him. When it hit him I got hit with pieces of meat. I was scared and started running. I ran across Remington Street and almost ran into a police car. I ran through towards Avenue D. I went back to the store at North Clinton and Clifford. I hung out for a while and then went home. I got a ride sometime after midnight. I drove to - - by the new jail and threw the gun in the canal.

T.368-370.

---

[1] Citations to "T.__" refer to pages of the trial transcript.

Nesmith, the victim, was twenty-two-years-old, 5'6", and reportedly weighed over 400 pounds. T..420. Deputy Medical Examiner Ana Rubio testified that Nesmith's hands had been placed in paper bags prior to the autopsy, and that at the time of the autopsy Nesmith's right hand was still clenching a cigarette. She further testified that the entrance wound was in the left temple and was at a higher location than the exit wound at the center of the back of Nesmith's head. Rubio further noted that there was no singeing of Nesmith's hair; had singeing been present, it would indicate that the wound was inflicted at close range, i.e., less than a foot away. T.400-420. Based upon this factor, Rubio opined the wound was most likely inflicted from a distance of greater than a foot away. T.421-422.

## III. Discussion

### A. Ground One: The verdict was against the weight of the evidence.

As Glover's first ground for relief, *see* Petition ¶12(a), he asserts that the "jury's verdict of murder was against the weight of evidence which proved only reckless action by petitioner, not the high degree of recklessness and the depraved indifference factual setting which are required for murder in the second degree." *See* Petition at 4-8 (Docket No. 1). On direct appeal, the Appellate Division held that "[c]ontrary to the further contention of defendant, the verdict finding him guilty of depraved indifference murder is not against the weight of the evidence[.]" *People v. Glover*, 302 A.D.2d at 926 (citing *People v. Bleakley*, 69 N.Y.2d 490, 495 (N.Y. 1987)).

As respondent argues, this claim is not cognizable on federal habeas review. "Weight of the evidence" claims derive from New York Criminal Procedure Law ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it

determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. CRIM. PROC. LAW § 470.15(5); People v. Bleakley, 69 N.Y.2d at 495. Thus, a "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. *People v. Bleakley*, 69 N.Y.2d at 495.[2] Since weight of the evidence claims are grounded in the state criminal procedure statute, they are not cognizable on habeas review. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (habeas corpus review not available to remedy alleged error of state law)ee 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas

---

[2] The New York Court of Appeals explained the difference as follows:

Although the two standards of intermediate appellate review-legal sufficiency and weight of evidence-are related, each requires a discrete analysis. For a court to conclude . . . that a jury verdict is supported by sufficient evidence, the court must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged. If that is satisfied, then the verdict will be upheld by the intermediate appellate court on that review basis.

To determine whether a verdict is supported by the weight of the evidence, however, the appellate court's dispositive analysis is not limited to that legal test. Even if all the elements and necessary findings are supported by some credible evidence, the court must examine the evidence further. If based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony."

*People v. Bleakley*, 69 N.Y.2d at 495 (citations omitted).

4

proceeding. *Ex parte Craig*, 282 F. 138, 148 (2d Cir.1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), *aff'd*, 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293 (1923); *Garrett v. Perlman*, 438 F. Supp.2d 467, 470 (S.D.N.Y.2006) (same); *Douglas v. Portuondo*, 232 F. Supp.2d 106, 116 (S.D.N.Y.2002) (same); *see also*, *e.g.*, *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir.1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; stating that it must defer to the jury's assessments of both of these issues").

### B. Ground Two: Prosecutorial misconduct

As his second ground for relief, *see* Petition ¶12(b), Glover asserts that "the petitioner was denied a fair trial when the prosecutor made arguments beyond the record during summation." *See* Petition at 8-17 (Docket No. 1). On direct appeal, the Appellate Division held that this contention was not preserved for appellate review. *People v. Glover*, 302 A.D.2d at 926 (citing, *inter alia*, *People v. Hess*, 234 A.D.2d 925, 925 (App. Div. 4th Dept. 1996) (" By failing to object to most of the statements by the prosecutor that are now alleged to constitute misconduct, defendant failed to preserve for our review his contentions with respect to those statements[.]") (citing N.Y. CRIM. PROC. LAW ("C.P.L.") § 470.05(2)). The Appellate Division declined to exercise its discretionary review power to review the claim in the interests of justice. Under C.P.L. § 470.05(2),[3] in order to preserve a claim of prosecutorial misconduct during summation for appellate review, a defendant must object to the remarks during trial, and, following the objection, request further instructions or move for a mistrial after the court issues a

---

[3] The statute, known as the "contemporaneous objection rule," requires that an objection to an alleged error be made "at the time of such ruling or instruction or at any subsequent time when the court ha[s] an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2).

curative instruction. *See*, *e.g.*, *People v. Heide*, 84 N.Y.2d 943, 944, 620 N.Y.S.2d 814, 644 N.E.2d 1370 (N.Y. 1994) (holding that prosecutorial misconduct claim was unpreserved where defense counsel failed to object further or request a mistrial after court issued curative instructions). Respondent argues that the Appellate Division's reliance upon C.P.L. § 470.05(2) invokes the adequate and independent state ground doctrine and bars habeas review of the prosecutorial misconduct claim.

Under the adequate and independent state ground doctrine, federal habeas review is precluded "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 1044 n. 10, 103 L.Ed.2d 308 (1989); *accord*, *e.g.*, *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). "The rule that 'an adequate and independent finding of procedural default will bar federal habeas review of the federal claim,' *id.* 109 S.Ct. at 1043, applies, absent a showing of cause for the default and resulting prejudice, *see Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977), or a demonstration that failure to consider the federal claim will result in a '"fundamental miscarriage of justice."'" *Velasquez*, 898 F.2d at 9 (quoting *Murray v. Carrier*, 477 U.S. 478, 495, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982)). Since the Appellate Division rested its decision on Petitioner's failure to comply with the contemporaneous objection rule, an independent and adequate state ground, the claims are barred. *See Velasquez*, 898 F.2d at 8, 9 (holding violation of New York's contemporaneous objection rule is an independent and adequate state ground in failing to preserve a claim that the prosecutor made improper comments during his opening statement and in summation). Petitioner has not asserted any cause for his

6

failure to make timely objections or request further instructions or move for a mistrial nor has he shown any resulting prejudice. He has also not demonstrated that failure to consider the claims will result in a fundamental miscarriage of justice. Therefore, this Court may not review the merits of Glover's prosecutorial misconduct claim. Ground Two accordingly is dismissed.

### C. Ground Three: Denial of Petitioner's New York Statutory Right (C.P.L. § 380.50(1)) to Make Statement or Speak at Sentencing

As his third ground for relief, *see* Petition ¶12(c), Glover asserts that the trial "court's failure to provide the petitioner with an opportunity to speak at sentencing was an error which requires [r]e-[s]entencing in the interest of justice." *See* Petition at 17-18. As a matter of New York statutory law, "[a]t the time of pronouncing sentence, the court must accord the prosecutor an opportunity to make a statement with respect to any matter relevant to the question of sentence. The court must then accord counsel for the defendant an opportunity to speak on behalf of the defendant. The defendant also has the right to make a statement personally in his or her own behalf, and before pronouncing sentence the court must ask the defendant whether he or she wishes to make such a statement." N.Y. CRIM. PROC. LAW § 380.50(1). On direct appeal, the Appellate Division held that the claim was unpreserved for review. *People v. Glover*, 302 A.D.2d at 926 (citing *People v. Green*, 54 N.Y.2d 878, 879, 444 N.Y.S.2d 908, 429 N.E.2d 415 (N.Y. 1981) (holding that because defense counsel did not request that defendant be afforded an opportunity to speak or bring such omission to the sentencing court's attention, this claim had not been preserved for review)).

As an initial matter, as respondent argues, the Appellate Division relied upon an adequate and independent state ground–namely, the failure to lodge a timely objection–in order to deny this sentencing claim. This results in a procedural bar to this Court reviewing the claim on

7

federal habeas, unless Glover can show cause for the default and prejudice attributable thereto, or that a fundamental miscarriage of justice will occur should this Court decline to hear the claim. The fundamental miscarriage of justice exception requires a showing of actual (i.e., factual) innocence. Glover has demonstrated neither cause nor prejudice; nor has he shown that he is actually innocent of the charges against him. Accordingly, the procedural default of his sentencing claim remains unexcused.

Moreover, Glover has merely asserted the denial of a right accorded to him under New York state statute. It is well settled that mere errors of state law do not warrant habeas relief. The United States Supreme Court has stated that "[t]he failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" *Hill v. United States*, 368 U.S. 424, 428 (1962). Accordingly, habeas courts have dismissed claims nearly identical to Glover's as not cognizable. *E.g.*, *Armato v. State of N.Y.*, 520 F. Supp. 1205, 1207 (S.D.N.Y. 1981) ("At least, as here, where the defendant was not affirmatively denied an opportunity to speak, and there is no evidence of other aggravating circumstances, the failure of the sentencing judge to ask the defendant who was represented by counsel whether he had anything to say was not an error of constitutional dimensions. Rather than revealing aggravating circumstances, the record indicates that defendant's counsel spoke on defendant's behalf prior to sentencing and

urged leniency. Thus the writ is dismissed for lack of substance.) (footnote omitted) (citing, *inter alia*, *McGautha v. California*, 402 U.S. 182, 218-19 & n.22, 91 S.Ct. 1454, 1472-1473 & n.22, 28 L.Ed.2d 711 (1971); *Hill v. United States*, 368 U.S. 424, 428-29, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962); *United States ex rel. Sabella v. Follette*, 432 F.2d 572, 576 (2d Cir.), cert. denied, 401 U.S. 920, 91 S.Ct. 905, 27 L.Ed.2d 822 (1970)).

    **D.    Ground Four: Ineffective Assistance of Appellate Counsel**

As his fourth ground for habeas relief, *see* Petition ¶12(d), Glover argues that "[a]ppellate counsel failed to raise issues which were the center of the trial counsels [sic] arguments, also failed to raise issues which were grounded in the court's own rulings." Petition at 18-19. Glover refers to "[i]ssue [sic] such as the failure of [sic] raising the justification defense, and the district attorney not following the courts [sic] ruling in questioning the petitioner involving pre trial hearings rulings [sic] which [sic] the court ruled against certain question and issue being raised by the people, [sic] if these issue [sic] were raised the outcome of this trial would of [sic] been more beneficial for the petitioner." *Id.* at 19. This is the extent of petitioner's pleadings on this claim; as respondent argues, he sets for only general allegations with no factual support. I agree with respondent that all of the allegations in Ground Four, except the suggestion that trial counsel failed to raise a justification defense, are too vague to state a colorable basis for habeas relief. It appears that Glover is arguing that appellate counsel improperly failed to argue that the trial counsel erroneously failed to raise that defense.

A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as a claim of ineffective assistance of trial counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992), *cert.*

*denied*, 508 U.S. 912 (1993)), *cert. denied*, 513 U.S. 820 (1994). A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. *Mayo*, 13 F.3d at 533-34; *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000). It bears noting that appellate counsel "need not (and should not) raise every non-frivolous claim, but rather, may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. at 288 (citing Jones v. Barnes, 463 U.S. 745, 750-54 (1983) ); *accord, e.g., Sellan v. Kuhlman*, 261 F.3d at 317 ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy") (citations omitted). The habeas court should not second-guess the reasonable professional judgments of appellate counsel as to the most promising appellate issues. *Jones*, 463 U.S. at 754; *see also Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998).

The state court denied Glover's *coram nobis* application challenging his appellate counsel's performance in a single-word order–"[d]enied." This constitutes an adjudication on the merits to which standard set forth in 28 U.S.C. § 2254(d)(1), (2), must be applied. In neither his Petition nor his Reply Memorandum does petitioner explain how trial counsel was ineffective in failing to assert a defense of justification under New York Penal Law § 35.15(2), which requires that before a defendant may use deadly physical force, he must "reasonably believe[ ] that such other person is using or about to use deadly physical force," and "[e]ven in such case, . . . , the actor may not use deadly physical force if he knows that he can with complete safety as to

10

himself and others avoid the necessity of doing so by retreating . . . . ." N.Y. PENAL LAW § 35.15(2). It appears that the evidence presented at trial–including petitioner's own version of events–negated such a defense. Importantly, the victim did not have a gun; the only parties to the confrontation who had guns were petitioner and his friend, Parsons. Furthermore, at the time of his death, the victim still had a cigarette clenched in the fingers of one hand. In light of these facts, it would have been reasonable for trial counsel to conclude that a justification defense under Penal Law § 35.15(1) was not likely to have been successful. The Supreme Court has instructed habeas courts to "apply [ ] a heavy measure of deference to counsel's judgments," and "[i]n any effectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances," *Strickland v. Washington*, 466 U.S. 668, 691 (1986). Where, as here, "[a]n attorney who presents a well-grounded, but ultimately unsuccessful defense, will not later be held to have provided ineffective assistance of counsel." *Gatto v. Hoke*, 809 F. Supp. 1030, 1039 (E.D.N.Y.) (citing *Trapnell v. United States*, 725 F.2d 149, 155 (2d Cir.1983) ("We have repeatedly noted our reluctance to second-guess matters of trial strategy simply because the chosen strategy was not successful.") (citations omitted)), *aff'd without opn.*, 986 F.2d 500 (2d Cir.1992). Glover has failed to overcome the presumption that, under the circumstances, the challenged action was not sound trial strategy. Moreover, he has failed to demonstrate that he was prejudiced either by trial counsel's failure to pursue a justification defense or by appellate counsel to argue trial counsel's ineffectiveness on direct appeal, as there is no reasonable probability that the outcome of his trial or his direct appeal would have been more favorable had either attorney performed differently. Accordingly, Ground Four must be dismissed.

## IV. Conclusion

For the reasons set forth above, petitioner Lamar Glover's petition for a writ of habeas corpus is denied. Because Glover has failed to make a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c).

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED: August 14, 2009
Rochester, New York.